**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **TINA RENNA,** | Civ. No. 2:11-3328 (KM)(MAH) |
| **Plaintiff,** | |
| **v.** | **OPINION** |
| **THE COUNTY OF UNION, NEW JERSEY,** | |
| **Defendant.** | |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court upon cross motions for summary judgment brought by the Defendant, The County of Union, New Jersey, Docket No. 20, and by the Plaintiff, Tina Renna, Docket No. 23. All fact discovery has been completed, *see* Docket No. 13, the motions are fully briefed, and I heard oral argument on May 29, 2014. I find that there are no genuine material factual disputes and that Plaintiff is entitled to judgment as a matter of law. Defendant's motion is denied and Plaintiff's motion is granted (although not on all of the grounds she asserts).

Renna produces a public access television show in Cranford, NJ, called the "Union County Citizen's Forum." The show displays on-air a graphic illustration depicting the Seal of the County of Union with a spotlight shining on it. The illustration symbolizes the self-proclaimed mission of the show to shine a critical light on the workings of the Union County Board of Chosen Freeholders.

The County responded through its attorneys. The County Attorney sent a cease-and-desist letter to the Township of Cranford warning it to stop displaying the County of Union seal, except in broadcasts of Freeholders' meetings. According to the County, Renna's use of the Seal infringes the County's trademark rights under the Lanham Act.

Whether the County has tried to bully a constituent is for the public to decide. The issues before me primarily involve the proper scope of trademark

law. Renna has sued seeking a declaratory judgment pursuant to 28 U.S.C. § 2201[1] that: (1) Union County has no trademark rights with respect to its official Seal; (2) Renna's display of the seal in connection with her television show does not constitute trademark infringement; and (3) Union County deprived Renna of her First Amendment rights when it threatened to enforce trademark laws against her. Because I decide the first two issues in Renna's favor, it is unnecessary to rule definitively on the third, although I touch on it in the final section of this opinion.

## I.   DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.P. 56(a); *see also Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248; *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Delaware River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that

---

[1]     Title 28, United States Code, Section 2201, provides:

(a) In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

Cross-motions for summary judgment must be analyzed separately under those standards. The denial of one side's motion, for example, does not imply that the other's must be granted. *See Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008); *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (D.N.J. 2009); *Clevenger v. First Option Health Plan of N.J.*, 208 F. Supp. 2d 463, 468-69 (D.N.J. 2002) (citing *Weissman v. U.S.P.S.*, 19 F. Supp. 2d 254 (D.N.J.1998)).

**B. Facts**

The facts are largely undisputed. I rely on factual contentions, supported by affidavits or documentary evidence, that are expressly admitted, or at least unopposed.

The defendant, Union County, is a governmental entity organized and existing under the laws of New Jersey. It has its principal place of business at the Union County Administration Building in Elizabeth, New Jersey. Docket No. 21, Defendant's Statement of Undisputed Material Facts ("Def. SUMF") ¶ 2. The County's governing body is the Union County Board of Chosen Freeholders (the "Board," or the "Board of Freeholders").

The plaintiff, Tina Renna, is a resident of the Township of Cranford, which is within Union County. Docket No. 23-2, Plaintiff's Statement of Undisputed Material Facts ("Pl. SUMF"). Renna, a citizen activist, has been an

3

outspoken critic of the Board of Freeholders. Pl. SUMF ¶ 7. Since December 2009, she has produced a local cable television show called "Union County Citizen's Forum." Pl. SUMF ¶ 3.

Union County Citizen's Forum focuses on the governance and political activities of Union County. Def. SUMF ¶ 3. The show airs on Cranford's public access cable television channel, Channel 35. Def. SUMF ¶ 6. A "news and information show," it features "reading[s] of the resolutions presented at meetings of the Union County Board of Chosen Freeholders," as well as discussions. Pl. SUMF ¶ 3.

Union County, as authorized by State law, has a registered official Seal.[2] The Seal is displayed at County and Freeholder meetings and on all County buildings and cars. The Seal is used on County correspondence, on every official County document, and on commercial contracts with vendors to signify the County's involvement. Docket No. 24-2, Defendant's Supplemental Statement of Undisputed Material Facts ("Def. Supplemental SUMF") ¶ 1.

Starting at the inception of her local public access television program in 2009, Renna used on-air a graphic illustration containing the Union County Seal. Pl. SUMF ¶ 3. Broadcasts of Union County Citizen's Forum would display a representation of the Seal with a theatrical spotlight shining on it. That graphic illustration was intended to symbolize the show's mission to illuminate the workings of County government. It would appear in the background as Renna read Board resolutions or interviewed guests on the air. Def. SUMF ¶ 7; Pl. SUMF ¶ 4. (*See* appendix to this opinion at "A" for a copy of the illustration.)

On July 10, 2010, Union County submitted an application to the United States Patent and Trademark Office ("USPTO"). The application sought to register the Union County Seal as a trademark. Pl. SUMF ¶ 18, Exhibit 1.

---

[2]     This Seal, by the way, may be the only official County seal to depict a murder. The central illustration is an artist's re-creation of the fatal shooting of Hannah Caldwell during the Revolutionary War. Hannah resided with her husband, "rebel pastor" James Caldwell, in the Connecticut Farms area of what today is Union Township. Her death in 1780, allegedly at the hands of a British soldier, was used to further galvanize public sentiment against England and its royalist sympathizers. *See* www.njstatelib.org/slic_files/imported/NJ_Information/Digital_Collections/NJInTheAmericanRevolution1763-1783/9.9.pdf (last visited May 20, 2014). An elementary school in Union Township now bears Hannah Caldwell's name. http://hannah.twpunionschools.org/

On September 17, 2010, Union County Counsel Robert E. Barry sent a letter to the Township of Cranford (the "cease-and-desist letter"). That cease-and-desist letter informed Cranford that it was using the Union County Seal without proper authorization and that such use infringed the County's trademark. Def. SUMF ¶ 8; Pl. SUMF ¶ 8; Compl. Exhibit A (September 17, 2010 Letter). Here is the pertinent language from the letter:

**Re: Unauthorized usage of the seal of the County of Union**
***Union County Citizens Forum***

To Whom It May Concern:

It has come to the attention of the County of Union that your entity is using the Seal of the County of Union without proper authorization. The County of Union demands that your entity cease and desist use of the Seal of the County of Union in any way including, but not limited to, displaying it in the background of all television shows with exception of the prerecorded unedited meetings of the Board of Chosen Freeholders. Please be advised that the County Seal is also a pending trademark, therefore you are committing trademark infringement.

September 17, 2010 Letter (*italic* emphasis added in re: line).

This cease-and-desist letter is addressed to the Township of Cranford, and its wording is somewhat general. There can be no doubt, however, concerning the "unauthorized usage" to which the letter refers. The re: line announces that the subject of the letter is unauthorized usage by "Union County Citizens Forum," Renna's television program. Pl. SUMF ¶ 9; *see* quotation from letter, above. And the letter carefully exempts from its scope the benign (from the County's point of view, that is) and authorized use of the Seal in broadcasts of Board meetings. In short, although Renna is not the addressee of the letter, the alleged infringing use is clearly Renna's.

Sometime after September 17, 2010, Renna discussed the County's cease-and-desist letter with Ed Davenport, the Channel 35 station manager. Davenport asked Renna not to use the Seal graphic any longer. Pl. SUMF ¶ 11. At the time of the letter, Renna was not taping new episodes of the show anyway, because the station was undergoing renovations. Pl. SUMF ¶ 11.

On October 18, 2010, the USPTO issued an Office Action addressing the County's pending trademark registration application. The Office Action

provided that registration was "refused because the applied-for mark consists of an insignia of a U.S. municipality." The USPTO cited 15 U.S.C. § 1052(b) as an "absolute bar" to registration on the Principal and Supplemental Registers. Pl. SUMF ¶ 19, Exhibit 2.

In January 2011, renovations to the station were completed, and Renna resumed taping her show. Because the cease-and-desist letter caused her to fear liability, Renna replaced the old logo. Instead of a spotlight shining on the County Seal, the graphic now consisted of a depiction of a spotlight shining on a photograph of the Union County Manager. Pl. SUMF ¶ 13. On February 8, 2011, Renna received an e-mail message from the station manager, Davenport, relaying a request from the Cranford Township attorney that Renna stop using the new logo with the image of the County Manager. Pl. SUMF ¶ 14. (*See* appendix to this opinion at "B" for a copy of the new logo.)

In about February 2011, Channel 35's management requested that Renna sign a "Producer Agreement and Indemnification Agreement." That Agreement would have required Renna to indemnify the Township of Cranford for any claims, demands, or lawsuits arising from her television show. Pl. SUMF ¶ 25. The execution of that indemnification agreement, says Renna, was presented to her as a precondition to further airing of her show. Pl. SUMF ¶ 26. Fearing personal liability, she refused to sign the agreement. Pl. SUMF ¶ 27. Renna decided to seek legal counsel. Pl. SUMF ¶ 15.

On April 5, 2011, Douglas R. McKusick, a staff attorney of the Rutherford Institute,[3] sent a letter on behalf of Renna to Mr. Barry, the Union County Counsel who had sent the cease-and-desist letter. In that April 5 letter, McKusick made several points: that a government insignia is not registrable as a trademark; that the County's Seal did not identify a tangible good; that the alleged infringement did not involve commercial activity; and that the County's claim of infringement was chilling Renna's exercise of her First Amendment rights. The letter requested that "the County withdraw its demand that Channel 35 and programming producers, such as Ms. Renna, cease and desist display of the Seal of the County of Union as the County has no right to prevent use of the Seal under trademark laws . . . ." Def. SUMF ¶ 9; Pl. SUMF ¶ 16; Compl. Exhibit B (April 5, 2011 Letter).

---

[3]    According to its website, The Rutherford Institute "provides free legal services to people whose constitutional and human rights have been threatened or violated." https://www.rutherford.org/about/ (last visited May 20, 2014). The website discusses First Amendment, privacy, and other issues.

By return correspondence dated April 21, 2011, the County rejected McKusick's demand. That letter was signed by Norman W. Albert, First Deputy County Counsel. Def. SUMF ¶ 10; Compl., Exhibit C (April 21, 2011 Letter). Albert's letter opened with an update: "For your information, this Seal is in fact now trademarked." In response to McKusick's arguments, Albert repeated that the seal was "trademarked under Federal law"; that by state statute, the County was required to maintain a seal; that use by others was unauthorized; that State law "prohibits a third party, such as your client, from registering a mark that uses such an insignia"; and that there was "no impairment of your client's first amendment right." Albert reiterated that the County "simply is protecting its official seal, protected by trademark, from direct and unauthorized use."

Meanwhile, Union County failed to respond within six months to the USPTO's October 2010 Office Action denying registration of the Seal as a trademark. (*See* pp. 5-6, *supra*.) On May 16, 2011, the USPTO issued a Notice of Abandonment of Defendant's trademark registration application. Pl. SUMF ¶ 20, Exhibit 3.

Union County then submitted to the USPTO a petition to revive its abandoned trademark registration application. Pl. SUMF ¶ 21. On August 24, 2011, the USPTO issued a second Office Action, addressing the revived application. That second Office Action adhered to the October 2010 ruling that the County Seal could not be registered as a trademark because it is an insignia of a state or municipality. Pl. SUMF ¶ 22, Exhibit 4. Again, the County did not respond within six months. Again, on March 21, 2012, the USPTO issued a Notice of Abandonment.

### C. Protection Under the Lanham Act

Union County contends that its Seal, which is displayed in many official contexts, is a service mark,[4] and that as such it is protected from infringement

---

[4]    "Service marks," used to identify the source of services, "are entitled to the same legal protection as trademarks." *Dranoff-Perlstein Associates v. Sklar*, 967 F.2d 852, 855 (3d Cir. 1992) (citing 1 Jerome Gilson, Trademark Protection and Practice § 1.02[1][b], at 1–11 (1991)). "Although technically distinct, the terms are often used interchangeably, with no significant legal consequences." *Id.* The distinction has no particular consequence to the issues discussed here, and I use the terms interchangeably.

under the Lanham Act.[5] Docket No. 24-2 ¶ 1 ("Def. Supplemental SUMF"). Renna responds that the seal, which is not registrable under Lanham Act Section 2, 15 U.S.C. § 1052(b), is not entitled to protection from infringement under the Act.

As a general matter, to prevail on a claim of infringement of a registered mark (Lanham Act Section 32) or an unregistered mark (Section 43), a plaintiff must satisfy three elements: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000). A plaintiff bears the burden of proving these elements. *Id.* The County's claims fail at step 1: whether registered or unregistered, the Seal is not a "valid and legally protectable mark."

### 1. Infringement of a registered mark (Lanham Act Section 32)

Section 32 of the Lanham Act, 15 U.S.C. § 1114, creates a cause of action for deceptively using or counterfeiting "a registered mark."[6] There is no

---

[5]     The Lanham Act is the Trademark Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.* As is common, I use the Lanham Act section numbers, occasionally providing parallel citations to the U.S. Code. For the reader's convenience, here are the main sections cited, with their U.S. Code equivalents:

Lanham Act Section  2 = 15 U.S.C. § 1052
Lanham Act Section 32 = 15 U.S.C. § 1114
Lanham Act Section 43 = 15 U.S.C. § 1125

[6]     I simplify. The relevant portion of the statute reads as follows:

**(1)** Any person who shall, without the consent of the registrant—

  **(a)** use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

  **(b)** reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to

longer any question that the Seal is not a registered trademark; indeed, the USPTO has twice declined as a matter of law to register it.

In July 2010, the County first submitted an application for trademark registration to the USPTO. Pl. SUMF ¶ 18, Exhibit 1. That application was under consideration when the County, in the September 17, 2010 cease-and-desist letter, stated that the mark was "pending." That was technically true, but not for long.

By Office Action dated October 8, 2010—some three weeks after the cease-and-desist letter—the USPTO rejected the County's registration application because the Seal is "an insignia of a U.S. municipality." Such a mark is explicitly barred from registration on the federal registers pursuant to Lanham Act Section 2(b), 15 U.S.C. § 1052(b). Pl. SUMF ¶ 19, Exhibit 2.

Here the USPTO was on solid ground. Section 2(b) of the Lanham Act provides:

> No trademark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration on the principal register on account of its nature unless it—
>
> . . .
>
> (b) Consists of or comprises the flag or coat of arms or other insignia of the United States, or of any State or municipality, or of any foreign nation, or any simulation thereof.

Lanham Act Section 2(b), 15 U.S.C. § 1052(b).[7] The syntax is negative, but the sense is clear: such insignia "shall be refused registration."

The County has proposed that the statute bars registration of insignia only by nongovernmental parties, not registration by the government body itself. The USPTO, however, correctly and authoritatively interpreted Section

---

deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided....

Lanham Act Section 32, 15 U.S.C. § 1114.

[7]    This Section 2(b) bar to registration is one of five listed as Sections 2(a) through (e). The "insignia" bar dates back to the Trademark Act of 1905, ch. 592, § 5, 33 Stat. 724 (1905), the predecessor of the Lanham Act.

1052(b) as an "absolute bar," one that "does not list any exceptions that would allow for countries, states or municipalities to register their own flags or insignia." Pl. SUMF ¶ 19, Exhibit 2.

This component of the USPTO's reasoning, too, was legally sound. Official insignia are explicitly listed in the statute as items that will be "refused registration." That bar to registration is general and categorical, and it does not exempt government bodies. *In Re City of Houston*, 101 U.S.P.Q.2d 1534 (Trademark Tr. & App. Bd. Jan. 18, 2012), *aff'd*, 731 F.3d 1326 (Fed. Cir. 2013) (upholding USPTO's refusal to register the Seal of the City of Houston, Texas). The Federal Circuit reasoned that the Section 2(b) registration bar speaks in terms of the nature of the insignia, not the identity of the applicant.[8] The Lanham Act, said the Court, must be read according to its terms, and not as a mandate to protect the public from "pirates and cheats" of all stripes. And it would be particularly inappropriate to read a silent exception into section 2(b), because the surrounding provisions demonstrate that Congress knew how to express such an exception when it wanted to. 731 F.3d at 1332.[9]

The County did not revise its position in response to the USPTO's authoritative rejection; it doubled down. Recall that the previous cease-and-desist letter had stated that the trademark (as conceded at oral argument, this could only have meant trademark *registration*) was "pending." In his April 21, 2011 letter to Renna's counsel, Albert peremptorily announced: "For your

---

[8]      The definitional section of the Act, too, encompasses government entities, not distinguishing them from other classes of "applicant." *In Re City of Houston*, 731 F.3d at 1331 (citing Lanham Act Section 45, 15 U.S.C. § 1127).

[9]      A Court is bound to implement the words of the statute as enacted, a proposition that requires little citation. *See, e.g., Lamie v. United States Trustee*, 540 U.S. 526, 538 (2004) (Kennedy, J.); *Anderson v. Wilson*, 289 U.S. 20, 27 (1933) (Cardozo, J.). I note, however, that the lack of any special exemption for government entities comports with the evident purpose of this bar to registration. The registration bar was not enacted to protect official prerogatives or preserve official symbols from desecration. Rather, the bar represents a more general determination that state insignia are not appropriate subjects of trademark law at all. Trademark law concerns itself with goods and services in commerce. As a leading authority explains it, Section 2(b)'s absolute bar is founded upon "the thinking that these kinds of governmental insignia . . . should not be registered as symbols of origin for commercial goods and services" because such insignia "ought to be kept solely to signify the government and not to be sullied or debased by use as symbols of business and trade." 5 McCarthy on Trademarks and Unfair Competition § 19:78. *See also In re City of Houston, supra.* And one can, of course, easily imagine the absurdities that would arise from the trademark registration of flags and insignia, which are *intended* to be used by the citizenry.

10

information, this Seal is in fact now trademarked under federal law." That statement carried the misleading implication that some intervening event had solidified the trademark status of the Seal. In fact, the opposite was the case; in the interim, the USPTO had categorically rejected the County's trademark registration application as a matter of law. (Of course, as discussed below, an unregistered trademark, too, may be protected, but that was not the import of the letter.) At oral argument, counsel for the County (not Albert) had no explanation for this statement, and, to his credit, did not attempt to justify it.

To that misleading implication, Albert added another: "N.J.S.A. 56:3-13-29(c) prohibits a third party, such as your client, from registering a mark that uses such an insignia." (I take this to be a typo for 56:3-13-2(c).) The State statute does not say that; it says this:

> 2. Registrability.
>
> A mark by which the goods or services of an applicant for registration may be distinguished from the goods or services of others shall not be registered if it:
>
> ...
> (c) consists of or comprises the flag or coat of arms or other insignia of the United States, or of any state or municipality, or of any foreign nation, or any simulation thereof ....

N.J. Stat. Ann. 56:3-13.2.

Essentially, the County here attempted to revive, in state-law form, its rejected position as to federal trademark law. But the state statute, like the federal one, provides categorically that an official insignia "shall not be registered." It contains no exemption for government entities. It is not confined to "third parties, such as your client."

Albert's letter then added the following *non sequitur*: "Indeed, N.J.S.A. 52:2-4 makes unauthorized use of the State seal a crime." And "indeed" it does, to the tune of $50.[10] But the Great Seal of the State of New Jersey is not at

---

[10] **52:2-4. Unauthorized use; penalty**

Any person who is not authorized by law to use, exhibit or display the State Seal, who uses, exhibits or displays the Great Seal of the State of New Jersey, in whole or in part, is a disorderly person and upon conviction as such shall be subject to a fine of $50.00.

issue here. It is hard to discern any purpose, other than general intimidation, for the citation of this criminal statute in an official communication to a citizen, even one represented by counsel. Again, counsel at oral argument offered no justification or explanation for Albert's citation of this statute.

The County, having abandoned its first application through six months of inaction, renewed its registration application to the USPTO. On August 24, 2011, the USPTO again ruled that Section 2(b) of the Lanham Act barred registration of the insignia of a State or municipality. Pl. SUMF ¶ 22, Exhibit 4.

The County cannot sustain a claim of infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114. That section gives rise to a claim for infringement of a *registered* mark. The Seal is not now a registered mark, and, given the double refusal of the USPTO, I suspect it never will be. The Seal has no registration status, "pending" or otherwise. The stated basis for the County's cease-and-desist letter turns out to be illusory.

## 2. Infringement of an unregistered mark (Lanham Act Section 43)

The County makes an alternative argument under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), that the Seal, as an *un*-registered mark, enjoys the same protection as a registered mark. Failure to register may deprive the mark's owner of certain advantages, but is not a legal barrier to trademark protection.[11] An unregistered mark may be established by use, and protected from false designation of origin and false advertising under Section 43(a).[12]

---

[11]     For example, registration serves as nationwide constructive notice. 15 U.S.C. § 1072. After five years of continuous use, registration may confer incontestable status. 15 U.S.C. § 1065. *See also Lucent Info. Mgmt., Inc. v. Lucent Technologies, Inc.*, 186 F.3d 311, 315 (3d Cir. 1999) ("federal registration of a trademark is prima facie evidence of the mark's validity, the registrant's ownership of the mark, and its exclusive right to use the mark in commerce"). But irrespective of registration, the owner's property rights in a mark are "established by prior use." *In re International Flavors & Fragrances, Inc.*, 183 F.3d 1361, 1366 (Fed. Cir. 1999).

[12]     **(a) Civil Action**

  **(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

The County contends that its Seal, even if unregistered, is a valid mark. Every county clerk, it says, must have an official seal, pursuant to N.J. Stat. Ann. § 40A:9-66. It follows that the county clerk "is the owner of the Seal and that the Seal is a symbol used to identify services provided by the County." Docket No. 19 ("Def. Br.") at 5. The Seal, says the County, is therefore a protectable mark, because its letters and symbols signify only one thing: the County of Union and the services the County provides. The County adds that the Seal is fanciful and thus inherently distinctive, entitled to strong trademark protection. Renna's use of the Seal, it concludes, may mislead the unwary into thinking her show is connected to County government, and her use of the Seal may therefore lawfully be halted.

Renna responds that, for the same reasons that the Seal is not registrable, it is not protected as an unregistered mark under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). She also contends that there is no likelihood of confusion because no reasonable person could believe that Renna, a vociferous critic, spoke for the County or offered County services. Docket No. 25 (Pl. Opp. Br.") at 2. She adds that she used the Seal, not in the commercial context to which the Act applies, but as a component of protected First Amendment expression.

"The Lanham Act protects unregistered marks to the same extent as registered marks because trademark rights emanate from use and not merely registration." *Duffy v. Charles Schwab & Co.*, Inc., 97 F. Supp. 2d 592, 598 (D.N.J. 2000). To put it another way, for a Section 43 action, registration is not a prerequisite. What is a prerequisite, however, is that the unregistered mark be a valid and protectable one. As to that issue, I think there is a difference between a mark that happens to be unregistered, and one that *cannot* be registered as a matter of law.

---

**(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

Lanham Act Section 43(a), 15 U.S.C. § 1125(a).

Can a mark that is unregistrable under Section 2 of the Lanham Act nevertheless support a cause of action under Section 43? I am persuaded that Section 2 declares certain marks to be unregistrable because they are inappropriate subjects for trademark protection. It follows that such unregistrable marks, not actionable as registered marks under Section 32, are not actionable under Section 43, either.

Defendant cites no case in which an unregistrable mark nevertheless has been afforded protection under Section 43(a), 15 U.S.C. § 1125(a). That dearth of authority is easily explainable. The Section 2 restrictions serve a broader purpose to distinguish fit from unfit subjects of trademark protection. To put it another way, a mark is not denied registration under Section 2 because of some quirk of the registration process; it is deemed unregistrable because it is not a suitable, protectable mark. *See* pp. 9-10 & n.9, *supra*.

Accordingly, the courts have not employed the Section 2 registrability analysis merely to bar actions for infringement of a registered mark under Section 32. To the contrary, they have transplanted Section 2 standards to the context of unregistered marks under Section 43.

For example, in *Two Pesos, Inc. v. Taco Cabana, Inc.*, the Supreme Court applied Section 2 standards to determine trademark validity in Section 43 cases. The Court acknowledged that Section 43(a) "prohibits a broader range of practices than does § 32," and of course section 43 does not require that the mark be registered. 505 U.S. 763 (1992) (citation omitted). But that does not imply that Section 43 applies to a different *kind* or *class* of mark. It is "common ground that § 43(a) protects qualifying unregistered trademarks and that the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable in determining whether an unregistered mark is entitled to protection under § 43(a)." *Id.* at 768.[13] That analysis

---

[13]     In his concurrence, Justice Stevens, relying on legislative history, further elaborated on the importation of Section 2's requirements into a Section 43(a) case:

> Congress explicitly extended to any violation of § 43(a) the basic Lanham Act remedial provisions whose text previously covered only registered trademarks. The aim of the amendments was to apply the same protections to unregistered marks as were already afforded to registered marks. *See* S.Rep. No. 100–515, p. 40 (1988). These steps buttress the conclusion that § 43(a) is properly understood to provide protection in accordance with the standards for registration in § 2. These aspects of the 1988 legislation bolster the claim that an inherently distinctive trade

strongly suggests that a mark that does not qualify for registration under Section 2 also does not qualify for protection under Section 43(a).

Later, in *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, the Court applied the Section 2 "distinctiveness" analysis to a trade dress claim under Section 43(a), which does not require "distinctiveness."[14] 529 U.S. 205, 210 (2000). In doing so, it cited *Two Pesos*' rationale that qualifications for registration under Section 2 are generally applicable to unregistered marks as well. *Id.* (quoting *Two Pesos, Inc.*, 505 U.S. at 768). *See also McCarthy on Trademarks and Unfair Competition* § 27:18 (explaining that when Section 43(a) is used as a federal vehicle for the assertion of traditional trademark or service mark infringement claims, "the courts have used as substantive law the traditional rules of trademark and unfair competition law").

The application of Section 2 standards to Section 43(a) cases makes sense. First, consistency has an independent virtue here: "What the law does not need is a separate set of different substantive trademark rules followed in § 43(a) cases. . . . A plethora of different rules and standards provides neither predictability nor consistency, both hallmarks of a rational and democratic legal system." *McCarthy on Trademarks and Unfair Competition* § 27:18. Second, as established above, Section 43 is intended to provide unregistered marks with *the same* protection provided to registered marks. A mark should not earn extra protection *because* it is not registered. The Congressional scheme would be scrambled if Section 43(a) were used to protect marks that could never have received any protection as registered marks.

In sum, the Union County Seal does not qualify for trademark protection as an unregistered mark under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). Accordingly, I find that Renna's use of the Seal in her graphic illustration does not violate any trademark right asserted by the County.

---

dress may be protected under § 43(a) without proof of secondary meaning.

*Two Pesos, Inc.*, 505 U.S. at 784, 112 S. Ct. at 2765 (Stevens, J., concurring) (footnote omitted). That reasoning supports the conclusion that Section 43(a) is intended to provide protection to an unregistered mark in accordance with the requirements set forth in Section 2.

[14]   The *Wal-Mart* Court was not discussing the protection of a "famous" mark under Lanham Act Section 43(c), 15 U.S.C. § 1125(c) (added in 1996). That anti-dilution provision does explicitly incorporate the concept of "distinctiveness."

### D. Miscellaneous Contentions; Avoidance of First Amendment issue

Ms. Renna also argues that, even assuming *arguendo* that the County had trademark rights with respect to the Seal, her use of the Seal did not infringe the County's trademark. Her show, carried on a public access channel, is not a business, and her use of the Seal did not occur in a commercial context. Rather, she used the seal in connection with exercising her right to describe and criticize the workings of County government. Such matters, she says, lie outside the concerns of trademark law.

Even as between private parties, trademark law has a particular purpose, and it should be confined to that purpose. The foundational concern of trademark law is "use" of a mark in connection with the furnishing of "goods or services." 15 U.S.C. §§ 1114, 1125. *See also Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924) ("A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his."); *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 205 (1942) (purpose of the Lanham Act is to prevent the use of identical or similar marks in a way that confuses the public about the actual source of goods and services). It protects purchasers from being deceived as to the source of goods.

Trademark law is not properly employed to stifle discussion. Microsoft Corporation could not use trademark law to enjoin a consumer from saying "I prefer Apple® to Microsoft®," nor could Apple do the reverse. Such comments simply have nothing to do with protecting a purchaser mistaking the source of goods.

> Case law ... supports the proposition that infringing use is only illegal if it is done in connection with the defendant's offer or provision of goods or services. In cases in multiple circuits, courts have held that individuals who use protected marks in the course of merely criticizing the trademark holders' goods or services do not violate the Lanham Act. *See Bosley Medical Institute, Inc. v. Kremer,* 403 F.3d 672, 677-80 (9th Cir. 2005) (comparing and discussing cases).

*Howard Johnson International, Inc. v. Vraj Brig, LLC,* 2010 WL 215831 at *6 (D.N.J. Jan. 14, 2010) (Thompson, J.). *See also L.L. Bean, Inc. v. Drake Publishers, Inc.,* 811 F.2d 26, 33 (1st Cir. 1987); *Ford Motor Co. v. 2600 Enters.,* 177 F. Supp. 2d 661, 664 (E.D. Mich. 2001). *But see People for the Ethical Treatment of Animals v. Doughney,* 263 F.3d 359 (4th Cir. 2001) (parody/criticism web site met "in connection with goods and services"

16

requirement because its use of PETA's trademark in its domain name had the effect of frustrating access to genuine PETA site, and because it linked to some thirty commercial websites).

A company may feel put upon by statements about itself that it considers inaccurate. But trademark law is not the solution to that problem; "trademark infringement protects only against mistaken *purchasing decisions* and not against confusion generally." *Bosley Medical Institute, Inc,* 403 F.3d at 677 (citing *Lang v. Ret. Living Pub. Co., Inc.,* 949 F.2d 576, 582-83 (2d Cir. 1991)).

> "[T]rademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view." *L.L. Bean, Inc. v. Drake Publishers, Inc.,* 811 F.2d 26, 29 (1st Cir.1987). Were we to ignore the expressive value that some marks assume, trademark rights would grow to encroach upon the zone protected by the First Amendment. *See Yankee Publ'g, Inc. v. News Am. Publ'g, Inc.,* 809 F. Supp. 267, 276 (S.D.N.Y. 1992) ("[W]hen unauthorized use of another's mark is part of a communicative message and not a source identifier, the First Amendment is implicated in opposition to the trademark right."). Simply put, the trademark owner does not have the right to control public discourse whenever the public imbues his mark with a meaning beyond its source-identifying function. *See Anti–Monopoly, Inc. v. Gen. Mills Fun Group,* 611 F.2d 296, 301 (9th Cir.1979) ("It is the source-denoting function which trademark laws protect, and nothing more.").

*Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894, 900-01 (9th Cir. 2002).

In short, a private company cannot shut down criticism or quash inaccurate information by prohibiting the use of its trademarked name. It must content itself with, for example, corrective public statements of its own, or an action for libel with respect to false statements.

When the supposedly aggrieved party is not a company but a governmental body, the *Mattel* concerns are writ large. In general, the First Amendment imposes more stringent limitations on the government's ability to restrain expression. Renna cogently contends that the County's assertion of trademark rights gives rise to a substantial First Amendment issue. That constitutional issue, however, is easily avoided by simply giving the words of Section 2(b) registration bar their plain meaning and scope. In doing so, I am influenced by the familiar principle that "[w]hen the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a

construction of the statute is fairly possible by which the question may be avoided." *Crowell v. Benson*, 285 U.S. 22, 62, 52 S. Ct. 285, 296, 76 L. Ed. 598 (1932). *See also Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring); Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts*, 247-51 (Thomson/West 2012).

Renna is clearly using the County Seal in an expressive manner. That expression, moreover, is political expression, entitled to the highest degree of constitutional protection. *See Thornhill v. Alabama*, 310 U.S. 88, 101 (1940) ("The freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern...."). Consider that the First Amendment prohibits a State from criminalizing the desecration of the United States flag as a form of political protest. *Texas v. Johnson*, 491 U.S. 397 (1989); *see also United States v. Eichman*, 496 U.S. 310 (1990) (federal flag-burning law). Should a county, by means of an artful extension of trademark law, be permitted to quash political expression that uses its Seal? I think such an extension would be both unwarranted and Constitutionally risky.

I leave for another day the question of whether a state or municipality may enjoin deceptive misuse of official insignia. The State should not be powerless to address such a case, particularly if it specifically targets deceptive, as opposed to expressive, statements. *See In re City of Houston*, 731 F.3d at 1331 ("We note that Houston has other means to prevent 'pirates and cheats' from using its city seal to deceive the public. Presumably the city of Houston could pass an ordinance prohibiting such activity.") The County has argued that a viewer could be misled by Renna's "spotlight" logo, but has not submitted any evidence that anyone was, or was likely to be, deceived.[15] But be that as it may, the County has failed to meet its threshold burden of demonstrating that trademark law is an appropriate vehicle for its complaints about Ms. Renna's use of its Seal.

---

[15]    At oral argument, both sides cited *Rothamel v. Fluvanna County*, 810 F. Supp. 2d 771 (W.D. Va. 2011). I do not find *Rothamel* particularly persuasive either way, because it dealt with a different set of issues. There, the county did not seek to assert trademark protection, but to enforce an ordinance against the unauthorized use of its seal. The court held that the ordinance, as applied to defendant's internet blog (which reported on county affairs and used the county seal), exceeded the permissible bounds of the First Amendment. *Id.* at 787. There, the defendant's use of the seal clearly fell within the scope of the ordinance, and the court was therefore required to decide whether enforcement of the ordinance violated the First Amendment. Because I find that Renna's use of the seal does not fall within the scope of the trademark law asserted by the County, I do not reach the First Amendment issues.

18

The County Seal cannot be deemed a protectable trademark or service mark under Section 32 or 43 of the Lanham Act. Finding that the County possesses no valid claim, I will grant Plaintiff's motion for summary judgment consisting of a declaration that her use of the County Seal in connection with her television program does not violate any valid trademark. I do not reach her request for a declaratory judgment that the County's assertion of trademark rights would violate her First Amendment rights; because I have declared such a trademark claim invalid, the freedom of speech issue becomes moot.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is **DENIED**. Plaintiff's motion for summary judgment is **GRANTED**.

Pursuant to 28 U.S.C. §§ 2201 and 2202, I will enter a judgment declaring that: (1) Union County has no trademark or service mark rights or protections with respect to the Seal of Union County and (2) Renna's display of the Seal of Union County in connection with her television show, Union County Citizens' Forum, does not constitute trademark or service mark infringement.

An appropriate order will be filed with this Opinion.

Dated: May 29, 2014

**KEVIN MCNULTY**
**United States District Judge**

19

# APPENDIX





