<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ | : | |
| TINA RENNA, | : | |
| | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 11-3328 (KM) |
| | : | |
| v. | : | |
| | : | |
| THE COUNTY OF UNION, N.J., | : | |
| | : | **<u>REPORT AND RECOMMENDATION</u>** |
| Defendant. | : | |
| _____ | : | |

### I.   <u>INTRODUCTION</u>

This matter comes before the Court by way of a motion for fees filed by Plaintiff's attorneys (collectively "Counsel") [D.E. 34, 35].   The Honorable Kevin McNulty, United States District Judge referred this motion to the Undersigned for a Report and Recommendation. Pursuant to Fed. R. Civ. P. 78, the Court decided this motion without oral argument.

For the reasons set forth below, the Court respectfully recommends that the District Court partially grant Counsel's motion, and award $39,535 in fees, and $550.65 in costs.

### II.   <u>BACKGROUND</u>

#### A.  **Relevant Facts**

Because the Court writes for the parties' benefit, it will discuss only the facts relevant to the current motion.   The Undersigned derives the relevant facts from the District Court's previous decision granting summary judgment in Plaintiff's favor, and denying Defendant's

motion for summary judgment.   See Renna v. County of Union, No. 11-3328, 2014 WL 2435775 (D.N.J. May 29, 2014).

This trademark infringement case contains related First Amendment issues.   Plaintiff Tina Renna resides in Union County, New Jersey, in the Township of Cranford ("Cranford"). See id. at *1.   Since 2009, she has produced a public access television show called the "Union County Citizen's Forum," which is often critical of the Board of Freeholders.   See id.   During her program, Plaintiff displays a graphic depicting a light shining on the Seal of Union County (the "Seal"), which aims to convey the show's purpose of exposing the County's inner workings. See id. at *3.

On July 10, 2010, Defendant applied to trademark the Seal.   See id.   On October 18, 2010, the United States Patent and Trademark Office ("USPTO") denied Defendant's trademark application, finding that 15 U.S.C. § 1052(b) prohibited registration of a United States municipality's insignia.   See id. at *4.   Defendant did not appeal the USPTO's decision within the six-month deadline.   Therefore, the USPTO issued a Notice of Abandonment of Defendant's trademark application on May 16, 2011.   See id. at *5.   On March 21, 2012, the USPTO rejected Defendant's untimely appeal, and issued a second Notice of Abandonment of Defendant's trademark application.   See id.

On September 17, 2010, Defendant sent Cranford a cease-and-desist letter (the "First Letter") demanding that it immediately stop displaying the Seal because that use allegedly violated Defendant's trademark rights.   See id. at *3-4.   Curiously, although Defendant addressed the First Letter to Cranford, the letter clearly was directed at Plaintiff's show.   Id. at *5.   In that letter, Defendant noted that the Seal was "a pending trademark."   See First Ltr.,

Sept. 17, 2010, Ex. A to Compl., D.E. 1.

Plaintiff stopped displaying the Seal during her television show for a few months, apparently because of the First Letter.[1]   See Renna, 2014 WL 2435775, at *4.   Whatever change the First Letter caused ended soon after Cranford asked that Plaintiff indemnify it against any potential lawsuits or damages arising from her show.   See id.   Plaintiff, as a result, consulted with Douglas R. McKusick ("McKusick"), a staff attorney with the Rutherford Institute, which is a non-profit that provides civil liberties legal services.   See id.   On April 5, 2011, McKusick sent defense counsel a letter asserting that the County could not register the Seal as trademark, and that Defendant's actions were chilling Plaintiff's First Amendment rights. See id.; see also McKusick Ltr., Apr. 5, 2011, Ex. B to Compl., D.E. 1.

In response, Defendant sent McKusick a letter dated April 21, 2011 (the "Second Letter").   See Renna, 2014 WL 2435775, at *4; see also Second Ltr., Apr. 21, 2011, Ex. C to Compl., D.E. 1.   In the Second Letter, defense counsel claimed the "Seal is in fact now trademarked," and that Plaintiff's display of the Seal thus violated both federal and state trademark law.   See Second Ltr. at 1, Ex. C to Compl., D.E. 1.   The Second Letter further stated that unauthorized use of the State seal violated N.J.S.A. 52:2-4, perhaps suggesting by association that Plaintiff's continued use of the Seal could similarly constitute a crime.   Id.; Renna, 2014 WL 2435775, at *11.   Notably, the Defendant sent the Second Letter approximately four months after the USPTO had denied its trademark application.   Therefore, it implausible that the Defendant did not, or could not reasonably have been expected to know, that

---

[1] The television station manager asked Plaintiff to stop using the Seal after the County Attorney issued the first cease-and-desist letter.   Renna, 2014 WL 2435775, at *5.

the Seal was not a registered trademark.   See Renna, 2014 WL 2435775, at *6-7.    At oral

argument on the summary judgment motions, Defendant's counsel could not explain that

obvious contradiction.   See id. at *6.

Plaintiff eventually filed this action seeking a declaratory judgment that: (i) her display of

the Seal violates no trademark laws; (ii) Defendant cannot trademark the Seal; and (iii)

Defendant violated Plaintiff's First Amendment rights by seeking to enforce trademark laws

against her   See Compl. at ¶¶ 25-30, May 26, 2011, D.E. 1.   In addition, Plaintiff sought

attorneys' fees pursuant to 42 U.S.C. § 1988 and 15 U.S.C. § 1117.   See id.

### B.  The Summary Judgment Decision

The Court's summary judgment decision solely addressed Plaintiff's trademark claims.

See Renna, 2014 WL 2435775 at *1-12.   Initially, the Court reasoned that Plaintiff could not

infringe the Seal because it was an unregistered (and essentially unregisterable) mark.

According to the Court, 15 U.S.C § 1052(b) is an "absolute bar . . . that does not list any

exceptions that would allow for countries, states or municipalities to register their own flags or

insignia."   See id. at *6 (internal citations and quotations omitted).   In particular, the Court

explained:

> The County cannot sustain a claim of infringement under Section
> 32 of the Lanham Act, 15 U.S.C. § 1114.   That section gives rise
> to a claim for infringement of a registered mark.   The Seal is not
> now a registered mark, and, given the double refusal of the
> USPTO, I suspect it never will be.   The Seal has no registration
> status, "pending" or otherwise.   The stated basis for the [Second
> Letter] turns out to be illusory.

Id. at *7 (emphasis in the original).   Further, the Court highlighted that Defendant, rather than

modify its position after receiving the USPTO's denial, actually "doubled down" by sending the

Second Letter and incorrectly stating that the Seal was "now trademarked under federal law." See id. at *6.   The Second Letter, therefore, "carried the misleading implication that some intervening event had solidified the trademark status of the Seal.   In fact, the opposite was the case; in the interim, the USPTO had categorically rejected the County's trademark registration application as a matter of law."   See id.

The Second Letter also misstated New Jersey state law because "the state [trademark] statute, like the federal one, provides categorically that an official insignia 'shall not be registered.'"   Id. at *7.   The Court also rebuked Defendant's suggestion that Plaintiff's display of the Seal was a criminal act, and found it "hard to discern any purpose, other than general intimidation, for the citation of [a] criminal statute to [Plaintiff who was] represented by counsel."   Id. (noting that N.J. Stat. Ann. § 52:2-4 makes unauthorized use of the Great Seal of New Jersey, rather than the Seal of Union County, a crime "to the tune of [just] $50.").

Next, the Court rejected Defendant's alternative argument that the Seal, which was an unregistered trademark, should receive the same protection as a registered mark.   See id. at *8 ("It follows that such unregisterable marks, not actionable as registered marks under Section 32, are not actionable under Section 43, either.").   Finally, the Court concluded that because it granted summary judgment on Plaintiff's trademark claim, Plaintiff's First Amendment claim was moot.   See id. at *11.

## III.   ARGUMENTS

### A.  Plaintiff's Motion for Fees

Counsel seek $45,295 in fees, and $550.65 in costs, as a "prevailing party" under both of

Plaintiff's asserted claims.[2]   See Pl.'s Reply Br. at 11, July 14, 2014, D.E. 37.   First, Counsel

assert that fees are appropriate under the governing trademark statute, 42 U.S.C.

§ 1117(a), which permits fees to prevailing parties "in exceptional cases."   Counsel argue that

Plaintiff is the prevailing party under § 1117 because she obtained a declaratory judgment

concerning her non-infringement of Defendant's trademark rights.   See Pl. Br. at 2-3, July 14,

2014, D.E. 35.   Plaintiff's attorneys also claim that Defendant's conduct during the litigation

was "unjustified and groundless, if not exhibiting bad faith," which in turn makes this case

"exceptional," because Defendant sought to enforce the Seal's non-existent trademark.   See id.

at 3-4.

Second, Counsel also seek "prevailing party" fees under the federal civil rights statute, 42

U.S.C. § 1988.   Although Counsel acknowledge that the Court never decided Plaintiff's First

Amendment claim, Counsel nonetheless assert that fees are appropriate because that claim shares

common facts with Plaintiff's successful trademark claim. See id. at 5-7.   In addition, Plaintiff's

attorneys stress that multiple attorneys often collect fees as prevailing parties, even if the

attorneys perform similar tasks.   See Pl.'s Reply Br. at 7-8, D.E. 37.

### i. Declarations in Support of Counsel's Motion

Luers seeks a lodestar award of $16,950 for billing 56.5 hours, at $300 per hour.   See

Decl. of Walter M. Luers in Support of Motion for Counsel Fees at ¶¶ 1, 6-10, D.E. 34-5.

("Luers Dec.") (seeking an award of $15,990 for 53.3 hours worked); see also Supp. Decl. of

---

[2] Three attorneys represented Plaintiff pro bono in this case: (i) Walter M. Luers, Esq. ("Luers"), who is Plaintiff's main New Jersey attorney; (ii) Douglas R. McKusick, Esq. ("McKusick"), a Virginia lawyer from Rutherford Institute; and (iii) F. Michael Daily, Esq. ("Daily"), a New Jersey attorney who acted as co-counsel. Each attorney submitted a declaration, and detailed time entries, supporting the fee application.

Walter M. Luers in Support of Motion for Counsel Fees, July 14, 2014, D.E. 37 ("Second Luers Dec.") (requesting $960 in fees for 3.2 hours incurred while replying to Defendant's opposition). Luers explains that he possesses more than fifteen years of litigation experience, and that he began representing Plaintiff in 2008 with various applications under New Jersey's Open Public Records Act ("OPRA").   See Luers Dec. at ¶ 4.   Although Luers previously entered into contingency agreements with Plaintiff, he contends that he received no payment for any of the work performed in this case.   See id. at ¶ 5.   Luers also claims that he retained Daily as co-counsel because of Daily's greater experience with civil rights cases.   See id. at ¶ 4.

Second, McKusick requests $19,425 in fees, at $375 per hour for 51.8 hours worked, and $450 in costs for payment of court filing fees.   See Decl. of Douglas R. McKusick ("McKusick Dec.") in Support of Motion for Counsel Fees at ¶¶ 18-20, D.E. 34-1 (requesting $17,287.50 in fees for billing 46.1 hours); see also Supp. Decl. of Douglas R. McKusick in Support of Mot. for Counsel Fees at ¶ 3, July 14, 2014, D.E. 37 ("Second McKusick Dec.") (seeking $2,137.50 for 5.7 hours expended replying to Defendant's opposition).   McKusick, who has twenty-nine years of civil rights litigation experience, currently works for the Rutherford Institute, which is a Virginia non-profit corporation that provides pro bono advice about civil liberties issues.   See McKusick Dec. at ¶¶ 2-3, 9-11.   Plaintiff contacted the Rutherford Institute once she received the First Letter, and McKusick provided Plaintiff pro bono legal services from January of 2011 to the present.   See id. at ¶ 4.   In support of his application for a $375 hourly rate, McKusick relies on the declaration of a Virginia attorney with thirty-seven years of civil rights legal experience.   See Decl. of Steven D. Rosenfield in Support of Motion for Counsel Fees at ¶¶ 2-4, D.E. 34-3. ("Rosenfield Dec.").   Rosenfield maintains that $375 is the prevailing hourly rate in

Virginia.   See id.

Third, Daily seeks a lodestar amount of $8,920, for 22.3 hours worked, at a $400 hourly rate.   See Decl. of F. Michael Daily in Support of Motion for Counsel Fees at ¶¶ 19-20, D.E. 34-2. ("Daily Dec.").   He also asks for $100.65 in transportation related costs.   See id. at ¶ 20. Daily claims that the Rutherford Institute and Luers initially retained his services to electronically file Plaintiff's Complaint, because he was the only registered e-filer.   See id. at ¶ 2.   Plaintiff later retained Daily, pro bono, as co-counsel because of his forty years of civil rights and general litigation experience.   See id. at ¶¶ 3, 6-7, 17-18.   Daily maintains that he chiefly served a supervisory role during the case.   See id. at 5.

Finally, Jamie Epstein, Esq., submits a declaration in support of the hourly rates claimed by Counsel.   See Decl. of Jamie Epstein in Support of Motion for Counsel Fees at ¶¶ 17-19, D.E. 34-4. ("Epstein Dec.").   Epstein is a New Jersey licensed attorney with more than twenty-five years of experience litigating education and civil rights matters.   See id. at ¶¶ 1-6.   Epstein explains that $450 is the customary billing rate charged by New Jersey attorneys for complex civil cases.   See id. at ¶ 13.   Accordingly, Epstein asserts that the hourly rates requested by Daily ($400), McKusick ($375), and Luers ($300) are reasonable given the legal market, and Counsel's particular experience.   See id. at ¶ 18.

### B.   Defendant's Opposition

In opposition, Defendant submits no affidavits or other proof contesting Counsel's fee application, including the reasonableness of the hourly rates.   Instead, Defendant offers three general arguments.   See Def.'s Opp. Br. at 1-9, July 3, 2014, D.E. 36.

Defendant first argues that no fees are recoverable under § 1117, because Plaintiff cannot

8

be a prevailing party.   Defendant reasons that Plaintiff "was never forced to defend herself in

the litigation."   See id. at 3.   Defendant also claims that it engaged in no culpable conduct

during the litigation, which is necessary for the court to find an "exceptional" case and award

fees.   See id. at 3-4.   Regarding the latter argument, Defendant asserts that fees would be

inappropriate because if any culpable conduct occurred here, it took place when Defendant sent

the First and Second Letters, which occurred before Plaintiff filed the Complaint.   See id. at 4.

Next, Defendant argues that Plaintiff is not a prevailing party under § 1988 because the

Court expressly avoided deciding her First Amendment claim.   See id. at 5-6.   Third,

Defendant argues that Counsel's application seeks unreasonable and duplicative fees and costs.

Essentially, Defendant claims that Plaintiff has not explained why she needed three different

attorneys from three different firms during this case.   See id. at 6-7.   Defendant also argues

that Counsel unnecessarily billed for performing the same work, such as preparing, reviewing,

and drafting the Complaint, Plaintiff's summary judgment motion, and the current fee

application.   See id. at 8.

## IV.   DISCUSSION

### A.  Counsel Fees Under 42 U.S.C. § 1988

The Court begins the analysis by recommending that the District Court deny Counsel's

fee application under § 1988.

Under the "American Rule," courts typically do not award fees to prevailing parties

"absent explicit statutory authority."   Buckhannon Bd. and Care v. West Va. Dept. of Health

and Human Resources, 532 U.S. 598, 603 (2001).   Several statutes, including the Civil Rights

Act of 1964, authorize fees to a "prevailing party."   See Buckhannon, 532 U.S. at 602; see also

Hensley v. Eckerhart, 461 U.S. 424, 429 (1983) ("The purpose of § 1988 is to ensure effective access to the judicial process for persons with civil rights grievances.") (internal citations and quotations omitted).

The Supreme Court has clarified that "enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorneys' fees."   Id. at 604 (internal citations and quotations omitted); see also Singer Mgmt. Consultants v. Milgram, 650 F.3d 223, 229 (3d Cir. 2011) (denying prevailing party fees because a temporary restraining order was not a final judgment on the merits) ("Congress intended to permit the interim award of counsel fees only when a party has prevailed on the merits of at least some of his [or her] claims.") (emphasis in the original).

Here, Counsel rely on Luria Bros. & Co., Inc. v. Allen, 672 F.2d 347, 357 (3d Cir. 1982) for the proposition that § 1988 allows fees, absent a final judgment, where a party successfully asserts another claim arising out of important related facts.   See Pl. Br. at 5-6, D.E. 35. Counsel's reliance on Luria is fundamentally misplaced because in Luria, the Third Circuit explained that a limited exception to the general rule requiring a final judgment on the merits for the recovery of fees applies when a party prevails on pendant state law claims.   See Luria, 672 F.2d at 357.   The Third Circuit in Luria actually reversed a fee award because although plaintiff prevailed on a pendant state civil rights claim, plaintiff quite clearly did not prevail on the federal civil rights claim.   See id. at 357 ("We find no legislative intent to treat a losing party in [a civil rights matter] as a 'prevailing party' simply because he prevails on a related state claim.").

Luria, therefore, does not assist Plaintiff in this case because: (i) Plaintiff asserted no state law claims, and (ii) Plaintiff obtained no final judgment on the merits concerning the civil rights

10

claim, since the District Court considered that claim moot.   See Compl. at ¶¶ 25- 30, D.E. 1;

Renna, 2014 WL 2435775, at *11; see also Rhodes v. Stewart, 488 U.S. 1, 4, 109 S. Ct. 202, 204

(1988) ("The case was moot before judgment issued, and the judgment therefore afforded the

plaintiffs no relief whatsoever.   In the absence of relief, a party cannot meet the threshold

requirement of § 1988 that he prevail, and in consequence he is not entitled to an award of

attorney's fees.").   Counsel, therefore, cannot recover fees under § 1988.

### B.  Counsel Fees Under 42 U.S.C. § 1117(a)

Next, the Court recommends that the District Court partially award fees to Counsel under

§ 1117.

Section 35(a) of the Lanham Act provides that "in exceptional cases [courts] may award

reasonable attorney fees to the prevailing party."   15 U.S.C. § 1117(a); Securacomm

Consulting, Inc. v. Securacom Inc., 224 F.3d 273, 280 (3d Cir. 2000) (highlighting that "the

language of § 35(a) authorizing attorney's fees to the prevailing party in the discretion of the

court [applies to] defendants as well as plaintiffs.")   In general, a party prevails when it obtains

a final judgment on the merits, which includes a declaratory judgment of non-infringement.

See Buckhannon, 532 U.S. at 602-04; see also Recouvreur v. Carreon, 940 F. Supp. 2d 1063,

1067 (N.D. Cal. 2013).   Even though Plaintiff in this case obtained declaratory judgment via

her summary judgment motion, she is clearly a "prevailing party."   See Recouvreur, 940 F.

Supp. 2d at 1067.   Accordingly, the Court must determine whether this case is "exceptional."

Traditionally, when analyzing whether a case is "exceptional," courts in this Circuit

conduct a two-part inquiry:

> First, the District Court must decide whether the defendant
> engaged in any culpable conduct. We have listed bad faith, fraud,

> malice, and knowing infringement as non-exclusive examples of
> the sort of culpable conduct that could support a fee award.
> Moreover, the culpable conduct may relate not only to the
> circumstances of the Lanham Act violation, but also to the way the
> losing party handled himself during the litigation. Second, if the
> District Court finds culpable conduct, it must decide whether the
> circumstances are "exceptional" enough to warrant a fee award.

Green v. Fornario, 486 F.3d 100, 103 (3d Cir. 2007).   In Green, the Third Circuit denied

plaintiff's request for fees because defendant did not knowingly infringe plaintiff's trademark in

bad faith.   See id. at 104-106; see also interState Net Bank v. NetB@nk, Inc., 348 F. Supp. 2d

340, 357 (D.N.J. 2004) (rejecting plaintiff's fee application where defendant litigated the

trademark case "in a professional and reasonable manner.").

However, in Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 314-17 (3d Cir. 2014),[3]

the Third Circuit revisited the governing standard for determining "exceptional" cases following

the Supreme Court's decision in Octane Fitness, LLC v. Icon Health Fitness, Inc., 134 S. Ct.

1749 (2014).   In Octane Fitness, the Supreme Court held "an exceptional case is simply one that

stands out from others with respect to the substantive strength of a party's litigating position

(considering both the governing law and the facts of the case) or the unreasonable manner in

which the case was litigated."   134 S. Ct. at 1756.   Thus, in Fair Wind, the Third Circuit

explained that after Octane Fitness, cases are now "exceptional" under the Lanham Act "when

(a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the

losing party has litigated the case in an "unreasonable manner."   Fair Wind, 764 F.3d at 315.

Essentially, then, a court's discretion to award fees "is not cabined by a threshold

---

[3] The Third Circuit notably clarified that even though Octane Fitness construed whether a patent case
was "exceptional" enough to warrant counsel fees, the same analysis applied to trademark cases because the
patent and trademark statutory fee provisions are "identical."   Fair Wind, 764 F.3d at 315.

requirement that the losing party acted culpably." Id. Although blameworthiness might be a factor, Octane Fitness "has eliminated the first step in [the Third Circuit's] two-step test for awarding fees under § 35(a) of the Lanham Act." Id. Whether a party's litigation conduct is "exceptional enough to merit attorneys' fees must be determined by district courts in the case-by-case exercise of their discretion, considering the totality of the circumstances." Id. (internal citations and quotations omitted). Courts, moreover, may consider a list of factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Octane Fitness, 134 S. Ct. at 1756 n.6 (quoting Fogerty v. Fantasy, 510 U.S. 517, 534 n. 19 (1994)).

Courts applying the more flexible Octane Fitness standard have awarded fees where the losing party has either pursued baseless claims, or engaged in inequitable conduct. See Lumen View Tech., LLC v. Findthebest.com, Inc., No. 13 CIV. 3599, 2014 WL 2440867, at *6-7 (S.D.N.Y. May 30, 2014) (granting fees where plaintiff's case was "frivolous and objectively unreasonable" because plaintiff conducted no pre-litigation investigation despite receiving notice that defendant's product simply could not infringe plaintiff's patent); Yufa v. TSI Inc., No. 09-1315, 2014 WL 4071902, at *5 (N.D. Cal. Aug. 14, 2014) (awarding fees where plaintiff's visit to defendant's headquarters indicated the weaknesses of plaintiff's claims, and that plaintiff "should have known that his lawsuit was objectively baseless"); Intellect Wireless Inc. v. Sharp Corp., No. 10-6763, 2014 WL 2443871, at *6-8 (N.D. Ill. May 30, 2014) (concluding case was "exceptional" where plaintiff knowingly made false statements to the USPTO to obtain a patent, withheld relevant discovery, and advanced meritless infringement claims). These cases also

13

instruct that, contrary to Defendant's contention, relevant pre-litigation conduct may be relevant to the analysis.   Lumen View, 2014 WL 2440867, at *6-7.

Pre-Octane Fitness decisions that identified "exceptional cases" are also instructive.   For example, courts in this Circuit previously found culpable conduct, and granted attorney's fees, where the losing party deliberately engaged in unreasonable or malicious litigation conduct. See Securacomm, 224 F.3d at 281-82 (ordering fees because of plaintiff's "sweeping attempt to beat a financially weaker opponent though the use of vexatious litigation," including plaintiff's deliberate filing of multiple suits in different jurisdictions); J&J Snack Foods, Corp. v. Earthgrains Co., No. 00-6230, 2003 WL 21051711, at *5-6 (D.N.J. May 9, 2003) (deciding matter was "exceptional" because it "was not a case where plaintiff was unsure of its status until this Court issued its summary judgment opinion.").   More specifically, in J&J Snack Foods, the court denied plaintiff's preliminary injunction application, and issued an opinion expressly detailing why plaintiff's infringement case was meritless.   See 2003 WL 21051711, at *4-5. Nonetheless, plaintiff continued the case, even after plaintiff's expert admitted that his opinion could not show infringement.   See id. at *5.

After considering the totality of the circumstances, the Court concludes that this case is "exceptional."   Arguably, Defendant legitimately believed that the Seal warranted the same protection as a legally protected mark.   Still, there is a significant disparity in the merits of the parties' respective litigation positions in this case.   The record demonstrates that Defendant litigated this case by asserting that Plaintiff violated a registered trademark, which Defendant knew, or should have known, did not exist.   See Renna, 2014 WL 2435775, at *11.   If Defendant was not aware of that fact when it sent the First Letter, it is reasonable to expect

14

Defendant to have been aware of it by the Second Letter, and surely by the time Plaintiff

commenced this litigation.   Nonetheless, the Defendant, as the District Court described it,

"doubled down" and continued to assert trademark violations based largely on federal and state

statutes that, by their terms, did not provide trademark protection for the Seal.

  The District Court did not find that Defendant acted in bad faith, fraudulently, or

maliciously; nor does this Court.   But the more flexible standard under Octane Fitness and Fair

Wind Sailing makes clear that is not a sine qua non of the exceptionality analysis.   It is enough

to conclude, as this Court does, that there is a significant disparity in the merits of the parties'

respective positions, and that certain of Defendant's positions were objectively unreasonable.

See Octane Fitness, 134 S. Ct. at 1756; Lumen View, 2014 WL 2440867, at *6-7.   First, as the

District Court noted, Defendant relied on the Lanham Act despite the fact that Section 2(b) of the

Act, 15 U.S.C. § 1053(b), makes clear that insignia such as the Seal "shall be refused

registration." Renna, 2014 WL 2435775, at *9 (quoting 15 U.S.C. § 1052(b)).   Defendant also

relied on N.J.S.A. 56:3-13-2(c), which similarly does not permit registration of official insignia

such as the Seal, even after the USPTO had denied trademark registration for the Seal.   Id. at

*11.   Second, as the District Court noted, the Second Letter "carried the misleading implication

that [the Seal was trademarked when] the opposite was the case."   Id. at *7.   Indeed, when

Defendant sent the Second Letter, the USPTO had denied Defendant's trademark application,

and issued a Notice of Abandonment because Defendant did not timely appeal the USPTO's

denial.   See id. at *3-4, *6-7.

  Third, as the District Court emphasized, it is "hard to discern any purpose, other than

general intimidation, for [Defendant's] citation of [a] criminal statute in an official

15

communication to a citizen, even one represented by counsel."   Id. at *7.   That is particularly true considering that N.J.S.A. 52:2-4 refers to the Great Seal of New Jersey, not the Seal of Union County, which is at issue here.   See id.   These factors collectively persuade the Court that Defendant pursued this matter by sending the letters to Plaintiff and maintaining its position in this litigation through summary judgment motion practice, despite ample notice that the Seal could not be trademarked.   See Renna, 2014 WL 2435775, at *4-7; McKusick Ltr., Apr. 5, 2011, Ex. B to Compl., D.E. 1.   As a result, the Court will award Plaintiff's attorneys fees and costs under 42 U.S.C. § 1117(a).   See J&J Snack Foods, 2003 WL 21051711 at *5-6.

### C.  Fee Awards

Having decided that this case is "exceptional," the Court must next consider whether Counsel's requested fees are reasonable.   "The starting point for determining any reasonable fee is to calculate a 'lodestar' amount; that is, the number of hours reasonably expended multiplied by a reasonable hourly rate."   Blakey v. Cont'l Airlines, Inc., 2 F. Supp. 2d 598, 602 (D.N.J. 1998).   Once determined, the lodestar is presumed the reasonable fee.   See Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990).   When calculating the lodestar amount, courts conduct a three-step inquiry: (i) decide a reasonable hourly rate, and multiply that rate by (ii) the number of hours the attorney reasonably expended, and (iii) alter the total amount, if necessary.   See J&J Snack Foods, 2003 WL 21051711, at *6.

Generally, the party seeking a fee award has the initial burden of proof.   See Maldonado v. Houstoun, 256 F.3d 181, 184 (3d Cir. 2001).   Although courts have considerable discretion to award fees, courts cannot decrease fee awards "based on factors not raised at all by the adverse party."   J&J Snack Foods, 2003 WL 21051711, at *6.   Nonetheless, courts may adjust

16

the lodestar if it is unreasonable based on the results of the case.   See Rode, 892 F.2d at 1183.

Typically, lodestar adjustments occur "for time spent litigating wholly or partially unsuccessful

claims that are related to the litigation of the successful claims."   Id.

### i. The Reasonable Hourly Rate

Prevailing market rates in the legal community usually set the reasonable hourly rate.

See AT & T Corp. v. JMC Telecom, LLC, No. 99-2578, 2005 WL 2086194, at *3 (D.N.J. Aug.

26, 2005) (explaining that the prevailing party satisfies this burden by "submitting the affidavits

of other attorneys in the relevant legal community, attesting to the range of prevailing rates

charged by attorneys with similar skill and experience.").   Under the "forum rate rule," out-of-

state attorneys obtain the hourly rate "prevailing in the forum in which the litigation is lodged."

Apple Corps. Ltd. v. Int'l Collectors Soc., 25 F. Supp. 2d 480, 493 (D.N.J. 1998) (internal

citations and quotations omitted).   If the prevailing party sets forth the reasonable hourly rate,

then the losing party may contest that rate with evidence in the record.   See J&J Snack Foods,

2003 WL 21051711, at *7.   The Court, however, must award fees to the prevailing party at the

requested hourly rate if the losing party submits no contradictory evidence.   See id.

The Court concludes that Plaintiff's attorneys have submitted sufficient evidence to

establish the reasonableness of the requested hourly rates.   See Epstein Dec., at ¶¶ 17-19, D.E.

34-4 (claiming $450 is the reasonable hourly rate for New Jersey attorneys); see also Rosenfield

Dec. at ¶¶ 2-4, D.E. 34-3 (contending $375 is the prevailing hourly rate for Virginia attorneys).

Moreover, because Defendant has submitted no affidavits or other evidence contesting Counsel's

prima facie showing, the Court will grant the requested amounts.   See, e.g., AT & T Corp.,

2005 WL 2086194, at *4.   Thus, Counsel's hourly rates shall be as follows: Luers $300 per

hour; McKusick $375 per hour; and Daily $400 per hour.   See Luers Dec., at ¶¶ 1, 6-10, D.E.
34-5; McKusick Dec., at ¶¶ 18-20, D.E. 34-1; Daily Dec., at ¶¶ 19-20, D.E. 34-2.[4]

### ii.  Time Reasonably Expended

The second step in this analysis requires the Court to determine whether Counsel
reasonably expended their time while working on this case.   See Blakely, 2 F. Supp. 2d at 604.
The Court may reject fees for any hours that are "excessive, redundant, or otherwise
unnecessary."  Id.   That is, in order to recover fees, an attorney's work must be "useful and of
a type ordinarily necessary to secure the final result obtained from the litigation."  Penn. v. Del.
Valley Citizens' Council for Clean Air, 478 U.S. 546, 561 (1986) (internal quotations omitted).
Regarding duplicative work, Courts may reduce fee awards "only if the attorneys are
unreasonably doing the same work."   Rode, 892 F.2d at 1187 (emphasis in original) (quoting
Jean v. Nelson, 863 F.2d 759, 773 (11ᵗʰ Cir. 1988)).   If the prevailing party demonstrates that
the requested hours are reasonable, then court may reduce fee awards only upon the adverse
party's objections.   See Bell v. United Princeton Properties, Inc., 884 F.2d 713, 720 (3d Cir.
1989).   When disputing time expended, the adversary need only provide "specific and clear"
objections about the challenged work.   See id.

Here, Defendant alleges that Plaintiff's attorneys excessively billed when performing

---

[4] The Court need not determine whether the "forum rate rule" applies here because Defendant has not
contested McKusick's $375 hourly rate.   See Apple Corps., 25 F. Supp. 2d at 493.   The Court, however,
notes that McKusick's requested hourly rate is actually below the $450 rate suggested by Epstein, a New
Jersey attorney.   See Epstein Dec., at ¶¶ 17-19.   Furthermore, courts in this District have previously awarded
hourly rates at or above $375 in trademark and commercial litigation. See J&J Snack Foods, 2003 WL
21051711, at *7 (granting $450 hourly rate in trademark infringement case); Illinois Nat. Ins. Co. v. Wyndham
Worldwide Operations, Inc., No. 09-1724, 2011 WL 2293334, at *2 (D.N.J. June 7, 2011) (awarding $540
hourly rates for partners in complex insurance litigation).

three tasks: (i) conducting legal research for and drafting the Complaint; (ii) drafting and reviewing Plaintiff's summary judgment motion; and (iii) drafting the current fee application. <u>See</u> Def.'s Opp. Br. at 8-9, July 3, 2014, D.E. 36.

First, the Court does not consider Counsel's time working on the Complaint excessive. As set forth in their declarations, McKusick worked on the Complaint for 3.8 hours, Daily for three hours, and Luers for one hour.   <u>See</u> McKusick Dec., at 3-4; Luers Dec., at 1; Daily Dec., at Ex. A.   Despite the case's outcome on summary judgment, the issues presented here are complex, and Counsel have provided sufficiently detailed time entries to substantiate time spent on this particular task.   The Court thus declines to adjust any of Counsel's requested hours concerning work performed for the Complaint.   <u>See</u> <u>Rode</u>, 892 F.2d at 1187.

Second, the Court further finds that Counsel's 30.2 hours spent working on Plaintiff's summary judgment motion were neither duplicative nor unreasonable.   In particular, a review of Counsel's time entries reveals the following time spent relating to Plaintiff's motion for summary judgment: (i) McKusick worked 22.4 total hours; (ii) Daily worked 1.3 hours, mainly reviewing Plaintiff's motion; and (iii) Luers worked 6.5 hours both drafting and reviewing the motion.   <u>See</u> McKusick Dec., at 4-5, D.E. 34-1; Daily Dec., at Ex. A, D.E. 34-2; Luers Dec., at 3-4, D.E. 34-5.

Trademark registration and protection is a complex and specialized area of the law, and the summary judgment briefing required the parties to address both it and First Amendment issues.   The briefing was extensive.   That is especially true considering that Plaintiff not only moved for summary judgment, but also opposed Defendant's cross summary judgment motion. Although those issues overlapped, the Counsel's submissions persuade the Court that briefing

required substantial work by Counsel, including the drafting of the Statement of Undisputed

Material Facts, and the eventual oral argument on the motion.    See Def.'s Mot. for Summary

Judgment, Oct. 11, 2013, D.E. 20, 21; Pl.'s Mot. for Summary Judgment, Oct. 11, 2013, D.E. 22,

23; Def.'s Response Summary Judgment Br., Oct. 18, 2013, D.E. 24; Pl.'s Opp. Summary

Judgment Br., Oct. 21, 2013, D.E. 25; Pl.'s Statement of Material Facts, Oct. 21, 2013, D.E. 26,

27; Pl.'s Response Summary Judgment Br., Oct. 28, 2013, D.E. 29.    In this respect, Counsel

reasonably billed time working on the summary judgment motions.    See, e.g., AT & T Corp.,

2005 WL 2086194, at *5 (granting fees where firms divided responsibilities during the

litigation).[5]

      Third, upon review of Counsel's time entries, the Court concludes that the 24.1 hours

---

[5] Because McKusick provided bills in minutes rather than hours, the Court summarizes his entries concerning Plaintiff's summary judgment motion.    For ease of reference, the Court combined duplicate task entries occurring on the same date; moreover, the chart solely includes entries specifically relating to Plaintiff's motion.    Ultimately, McKusick spent a total of 1,345 minutes working on Plaintiff's summary judgment motion, which totals 22.4 hours.    See McKusick Dec., at 4-5, D.E. 34-1.

| Date | Task Performed | Minutes |
|---|---|---|
| 9/11/2013 | Preparation of Summary Judgment Motion | 75 |
| 9/27/2013 | Preparation of Affidavits | 75 |
| 9/27/2013 | Preparation of Undisputed Material Facts Statement | 95 |
| 9/30/2013 | Preparation of Summary Judgment Memo | 250 |
| 10/1/2013 | Preparation of Summary Judgment Memo | 95 |
| 10/2/2013 | Preparation of Summary Judgment Memo | 240 |
| 10/2/2013 | Preparation of E-Mail to M. Daily | 5 |
| 10/3/2013 | Preparation of Summary Judgment Memo | 40 |
| 10/3/2013 | Preparation of Undisputed Fact Statement | 95 |
| 10/7/2013 | Preparation of Renna Declaration | 10 |
| 10/7/2013 | Preparation of Undisputed Fact Statement/Exhibits | 145 |
| 10/8/2013 | Preparation of Renna Declaration | 10 |
| 10/8/2013 | Preparation of E-mail to Renna | 5 |
| 10/8/2013 | Preparation of Undisputed Fact Statement/Exhibits | 95 |
| 10/8/2013 | Preparation of Summary Judgment Memo | 60 |
| 10/9/2013 | Preparation of Summary Judgment Motion | 50 |
| | | **TOTAL:** 1,345/60= 22.4 |

Counsel expended on the current fee application was duplicative.   See Freid v. Nat'l Action Fin. Servs., Inc., No. 10-2870, 2011 WL 6934845, at *8 (D.N.J. Dec. 29, 2011) (awarding fees for five hours, instead of the requested eight hours, because the fee petition was "not particularly comprehensive and there was no oral argument.").   While prevailing parties may collect reasonable fees for the time spent preparing a fee petition, courts may reduce these fees "to reflect the partial success of the petition."   Id. at *3.   Even so, "administrative tasks, which are not the type normally billed to a paying client, may not be recovered by a party through a fee petition."   Id. at *8 (explaining that "opening a file in a database, mailing letters, and copying documents to a CD" are types of administrative tasks) (internal citations and quotations omitted).

A line-by-line review of the time entries indicates that McKusick and Luers primarily drafted the fee application, and Daily reviewed it before filing.   See McKusick Dec., at 4-5, D.E. 34-1; Daily Dec., at Ex. A, D.E. 34-2; Luers Dec., at 3-4, D.E. 34-5.   For instance, Daily expended 1.7 hours preparing his declaration, and reviewing the motion, Luers spent 8.1 hours, and McKusick, in turn, worked on this motion for a total of 14.3 hours. See Daily Dec., at Ex. A, D.E. 34-2; Luers Dec., at 3-4, D.E. 34-5; McKusick Dec., at 4-7, D.E. 34-1.   Daily's hours are modest, appear related to his supervisory role in this case, and are therefore reasonable.

Conversely, the Court recommends decreasing by one-half the compensable time spent by Luers and McKusick.   Despite the apparent complexity of the issues presented in the summary judgment briefing, Counsel surely could have budgeted their time more efficiently in the fee petition.   Unlike the issues presented in the cross summary judgment motions, the issues in the fee application are less novel.   As previously explained, because of the District Court's summary judgment decision, Counsel simply lacked a legal justification to request prevailing

party fees under § 1983.   Moreover, the extensive factual record quite clearly supported

Plaintiff's fees under § 1117.   Thus, Luers shall receive fees for 4.0 total hours, and McKusick

7.1 total hours.   See Freid, 2011 WL 6934845, at *8.

     The Court will likewise reduce fees requested by Luers and McKusick in connection with

replying to Defendant's opposition to this motion.   Regarding Plaintiff's reply, Luers requests

fees for 3.2 hours, and McKusick requests fees for 5.7 hours.   See Second Luers Dec., July 14,

2014, D.E. 37; see also Second McKusick Dec., July 14, 2014, D.E. 37.   Counsel's reply,

however, mainly relies on many of the same cases cited in the moving brief.   In addition, by

this point, the parties had extensively briefed any factual issues.   Thus, the Court again imposes

a fifty percent reduction to the requested fees such that Luers shall be compensated for 1.6 total

hours, while McKusick shall receive fees for 2.8 total hours.

### iii.  Adjustments

#### 1.  Fees

     Once parties partially prevail on asserted claims, "the court must address (1) whether the

unsuccessful claims were unrelated to the successful claims; and (2) whether the plaintiff

achieved a level of success that makes the hours reasonably expended a satisfactory basis for

making a fee award."   Blakey, 2 F. Supp. 2d at 605 (quoting Hensley, 461 U.S. at 434).   Courts

may adjust fees in two main ways by: (i) identifying specific time that was unreasonably

expended; and (ii) reducing the fee because of limited success.   Hensley, 461 U.S. 436-37.

The Supreme Court "has rejected the notion that the fee award should be reduced 'simply

because the plaintiff failed to prevail on every contention raised in the [case].'"   Blum v. Witco

Chem. Corp., 829 F.2d 367, 378 (3d Cir. 1987) (citing Hensley, 461 U.S. 424, at 435)).   Rather,

if interrelated claims are present, courts should "focus on the significance of the overall relief obtained by plaintiff in relation to the hours reasonably expended on the litigation."   Blakey, 2 F. Supp. 2d at 606.

After a thorough review of Counsel's time entries, the Court will not adjust the requested fees based on Plaintiff's partial success solely because her trademark claim undoubtedly shares related facts with her unsuccessful First Amendment claim.   See Blum, 829 F.2d at 378-79. The Court finds it appropriate to compensate Counsel for prevailing, via summary judgment, on the trademark claims.   However, the Court will deduct one hour from Luers' fee award for time billed performing administrative tasks, including filing a status report via CM/ECF.[6]   See id.; see also Luers Dec., at Ex. A.

### 2.   Costs

Prevailing plaintiffs may recover the "costs of the action" under the Lanham Act; and, such costs include travel expenses, and filing fees.    15 U.S.C. § 1117(a); SNA, Inc. v. Array, 173 F. Supp. 2d 347, 353 (E.D. Pa. 2001).   Here, Daily seeks $100.65 for traveling to court for a settlement conference; and, McKusick requests $450 for filing fees paid by the Rutherford Institute.   See Daily Dec., at Ex. A, D.E. 34-2; McKusick Dec., at ¶ 20, D.E. 34-1.   The Court will not adjust Counsel's requested costs because they are reasonably related to this litigation,

---

[6] Specifically, the Court concludes that the following two time entries reflect administrative tasks for which Luers cannot properly collect fees:

| Date | Task Performed | Hours |
|---|---|---|
| 08/01/13 | File status report through CM/ECF | .1 |
| 10/21/13 | Attention to service and filing of opposition papers | .9 |
|  |  | **Total:** 1.0 |

See Luers Dec., at Ex. A.

and were properly documented.   See SNA, 173 F. Supp. 2d at 353.

### D.  Lodestar Calculation

For the reasons set forth above, and in light of the appropriate adjustments, the lodestar

is:

| Attorney | Hours | Hourly Rate | Total |
|----------|-------|-------------|-------|
| F. Michael Daily | 22.3 | $400 | $8,920 |
| Walter M. Luers | 49.8 | $300 | $14,940 |
| Douglas R. McKusick | 41.8 | $375 | $15,675 |
|  | 113.9 |  | $39,535 |

### V.  CONCLUSION

As previously explained, the Court respectfully recommends that the District Court

partially grant Counsel's motion [D.E. 34, 35] and award $39,535 in fees, and $550.65 in costs.

Under 28 U.S.C. § 636, and L. Civ. R. 71.1(c)(2), the parties have fourteen days to file

and serve objections to this Report and Recommendation.


Michael A. Hammer
**UNITED STATES MAGISTRATE JUDGE**

Date: January 6, 2015